```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


SHS INVESTMENT d/b/a HANDI STOP,§
                                §
          Plaintiff,             §
                                §
VS.                              §   CIVIL ACTION H-10-4004
                                §
NATIONWIDE MUTUAL INSURANCE      §
COMPANY                          §
                                §
          Defendant.             §
```

**OPINION AND ORDER**

Pending before the Court in the above referenced cause alleging breach of insurance contract arising from nonpayment of insurance benefits for damages sustained by Plaintiff SHS Investment d/b/a Handi Stop 98's property as a result of Hurricane Ike, as well as extra-contractual claims for unfair settlement practices and failure to promptly pay claims in intentional violation of the Texas Insurance Code, intentional breach of the duty of good faith and fair dealing, and multiple violations of the Deceptive Trade Practices Act ("DTPA"), are (1) Nationwide Mutual Insurance Company's ("Nationwide's") motion for partial dismissal under Federal Rule of Civil Procedure 12(b)(6)(instrument #3) and (2) Nationwide's notice renewing motion for partial dismissal with prejudice (#18) of Plaintiff's extra-contractual claims. The latter motion was filed because, after its Original Petition (#1,

Ex. 4) was filed and served and after removal, Plaintiff was granted leave to, and did, file a superseding First Amended Complaint (#16). Nationwide's renewed motion challenges this amended pleading as only adding more conclusory statements and, like the Original Petition, failing to satisfy federal pleading standards.

## Standards of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." All well pleaded facts must be viewed as true, "in the light most favorable to the plaintiff. *Lindquist v. City of Pasadena, Texas*, 525 F.3d 383, 386 (5th Cir. 2008). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of

-2-

the claim, but also the 'grounds' on which the claim rests." *Id.* at 555, n.3. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009), *citing Twombly*, 550 U.S. at 556.

Fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): "In allegations alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fifth Circuit strictly construes the Rule and requires the plaintiff pleading fraud in federal court "'to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc,. v. TXU Corp.*, 565 F.3d 200. 206-07 (5th Cir. 2009)(*quoting Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)), *cert. denied*, 130 S. Ct. 199 (2009)). A dismissal for failure to plead with particularity as required by this rule is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Because "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994). "Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 742-43 (S.D. Tex. 1998). *See also, e.g., Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); *Patel v. Pac. Life Ins. Co.*, No. 3:08-CV-249, 2009 WL 1456526, *18 (N.D. Tex. May 22, 2009)(applying Rule 9(b) to Texas Insurance Code claims); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824-25 (N.D. Tex. 2001)(and cases cited therein)("[C]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)."); *Flowserve Corp. V. Hallmark Pump Co.,* 2010 WL 2232285, *6 (S.D. Tex. Feb. 3, 2010)(same). Where "[t]he factual background of . . . claims is substantively identical," causes of action arising under DTPA, the Texas Insurance Code, or common law fraud must satisfy Rule 9(b), which reaches "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith*, 9 F. Supp. 2d at 742, *citing Berry*, 608 F.

Supp. 2d at 789, 800; *Hernandez v. Ciba-Geigy Corp., USA*, 200 F.R.D. 285, 290-91 (S.D. Tex. 2001).

Federal Rule of Civil Procedure 15(a)(2) states, "The court should freely give leave [to amend the pleadings] when justice so requires." The decision whether to permit amendment "is entrusted to the sound discretion of the district court." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). Nevertheless, the Fifth Circuit has commented that the term "discretion" "'may be misleading because Fed. R. Civ. P. 15(a) evinces a bias in favor of granting leave to amend.'" *Mayeaux v. Louisiana Health Serv. & Indemn. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)(citation omitted). "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Id.* (citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are

unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]"). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

**Allegations of Plaintiff's Amended Complaint (#16)**

Plaintiff alleges that it is the owner of a Texas Commercial Windstorm Policy ("the policy"), number ACPBPAM05522289286, which was sold by Nationwide to Plaintiff to cover its property at 6007 FM 2100 Road, Crosby, Harris County, Texas. On or about September 13, 2008 Hurricane Ike severely damaged the building(s), restaurant, carwash, business personal property, gas pumps, canopies and signs and caused loss of business income. Plaintiff claims that when water intruded through the roof, damaging the inside if the store and restaurant, ceiling tiles and items inside the business, wall and sheetrock ceiling furrdown, television, speaker system for gas pumps, ice machine, security camera system, rear wall and ceiling, restroom walls in the bathrooms, and door

areas.[1]  In the storage room an opening in the roof and water leaks in the ceiling and walls caused more damage, including to a wall hatch over a cooler door, to a three-door ice cream cooler, to ceiling tiles and a ceiling rack that collapsed, and to another cooler.  In the electrical room water damaged electrical panels, a light fixture, a rear door, and the kitchen.  Outside the building the storm blew away a sign by the street, a sign and voice box, and shrubbery.  Apparently another storage shed lost its roof and water damaged the walls.  There was damage to the canopy fascia on the gas isle, from which the vacuum cleaner's canopy was torn off, and the vending machines and vacuum cleaners were lost or damaged, as were the car wash tunnel and storage rooms located in it.  The front, rear, right, and left sides of the exterior of the convenience store and restaurant were damaged, as was the roof.

Plaintiff filed its claims with Nationwide and contends that Defendant failed to adjust them and denied at least part of them without an adequate investigation.[2]  Nationwide's adjuster, Tom

---

[1] Plaintiff's description of its damaged property is not clear, but the Court has attempted to mention all items to which it vaguely refers.

[2] In footnotes the Court points out a number of allegations that are too general and conclusory or track the bare bones language of statutes and thus fail to satisfy federal pleading standards. With some factual support, these allegations might rise to the level of plausible claims under Rule 12(b)(6) and satisfy the heightened requirements for fraud-based claims under Rule 9(b).
    Plaintiff fails to identify which particular claims need adjustment or examples of those which were at least partially denied or identify factors that would make for an adequate

Catrell, Sr. ("Catrell"), severely undervalued the cost of repairs and/or replacement of damaged property, did not note or pay for many items set forth in this complaint, failed to pay for loss of business income, loss of business inventory items, and other items, as evidenced by comparing Catrell's estimate with that provided by Plaintiff's experts.[3]  Defendant initially determined that Plaintiff's total loss was $17,614.44, and it paid Plaintiff $11,693.83.  Later, in March 2009, Defendant made a supplemental payment of $32,804.86, and in April 2009, of $23,693.27.[4] Nevertheless Plaintiff "believes that the evidence will show that Defendant knew Plaintiff's damages exceeded the amount determined by Nationwide and supplemented and continued to fail to pay the same despite said knowledge.[5]  Plaintiff maintains that Nationwide certainly had knowledge in October 2009, when Plaintiff submitted to Nationwide an engineer's report and an estimate with the same

---

investigation that were not considered here.

[3] Plaintiff needs to provide examples of undervaluation by Catrell, the amount of Plaintiff's lost business income, what inventory items were lost and their value, what was Catrell's estimate, and what Plaintiff's experts estimated for what losses and how they reached these conclusions.

[4] Why and for what did Nationwide issue the supplemental payments and what did they not cover?

[5] How and when did Plaintiff know that repair or replacement of the damaged property would cost more than it was paid, and by how much and for what?

and other documentation supporting other claimed losses.[6] Plaintiff charges that Defendant wrongfully denied Plaintiff's claims for repairs of the property and loss of business income and business inventory even though the policy provided coverage for those losses.[7]  Nationwide also undervalued and underpaid damages suffered by Plaintiff,[8] and it continues to delay and deny payment for damages due and owing under the policy.

Plaintiff conclusorily asserts that Nationwide failed to perform its contractual duty to adequately compensate Plaintiff under the terms of the policy and failed and refused to pay the full proceeds of the policy even though due demand was made and all conditions precedent to recover had been effected.

Defendant misrepresented to Plaintiff that certain elements of damage to the property, inventory, and business income were not covered[9] even though the damage was caused by a covered occurrence, in violation of Section 541.060(a)(1) of the Texas Insurance Code.

---

[6] What did the engineer's report and the estimate state?  What were Plaintiff's "other claimed losses" and their value as estimated by Nationwide and by Plaintiff's expert?

[7] What provisions in the policy cover what particular losses claimed by Plaintiff?

[8] Which damages did Nationwide undervalue and underpay and in what amount?

[9] Which elements of damage did Defendant misrepresent and where in the policy are they covered?

Nationwide's misrepresentations were unspoken; they were made via conduct in the claims handling process.[10]

Plaintiff observes that the same actions constitute a violation of the DTPA pursuant to its tie-in provision for the Texas Insurance Code violations. Nationwide's actions also constitute violations of the Act independently of the tie-in provisions.[11] At all material times, Plaintiff asserts it was a consumer of a commercial windstorm insurance policy from Defendant and that Defendant violated the DTPA in the following ways: representing that the goods or services in question had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they did not have; representing that an agreement confers or involves rights, remedies or obligations that it does not have or involve or that are prohibited by law; failing to disclose information about the goods or services in question that was known at the time of the transaction and the failure to disclose what was intended to induce Plaintiff into a transaction that Plaintiff would not have entered into had the information been disclosed; breach of the express warranty with regard to services; and Defendant's unconscionable actions and/or courses of action.

---

[10] What conduct by Nationwide misrepresented what?

[11] The Texas Insurance Code allows an insured to bring a cause of action through its tie-in statute, Section 541.151(2), for deceptive acts or practices enumerated in Section 17.46(b) of the DTPA, Tex. Bus. & Com. Code Section 17.46(b).

Plaintiff claims that it relied on the statements in correspondence sent by Nationwide, including the statement that Nationwide would pay for additional damages brought to its attention, but it has failed to do so.[12] Plaintiff claims that to its detriment, Defendant did not and continues not to pay for those additional damages and that these were a producing cause of Plaintiff's damages. Because Defendants' acts were done knowingly and intentionally, Plaintiff claims it is entitled to mental anguish fees and additional statutory damages.

The complaint further pleads that Nationwide breached its duty of good faith and fair dealing in failing to adequately and reasonably investigate and evaluate Plaintiff's claims, although it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. The allegation is conclusory and mentions abstract elements of the cause of action without showing facts that demonstrate their existence.

Nationwide also failed to attempt to settle Plaintiff's claims in a fair manner even though it was aware of its liability under the policy, in violation of Section 541.060(a)(2)(A).[13]

---

[12] The Court agrees with Nationwide that the DTPA allegations are vague and conclusory, tracking the language of the statute, without supporting facts for Plaintiff's claim.

[13] Identify any attempts to settle claims and show why they were "unfair." How was Nationwide made aware of its liability and what provisions in the policy made it liable?

In addition Nationwide failed to explain to Plaintiff the reasons for its inadequate settlement offer and its failure to offer adequate compensation, nor did it communicate that any future settlements or payments would be made to pay for the covered losses, in violation of Section 541.060(a)(3) of the Texas Insurance Code.[14]

Moreover Nationwide failed to affirm or deny coverage of Plaintiff's claims within a reasonable time in violation of Section 541.060(a)(4).[15]

Nationwide also failed/refused to fully compensate Plaintiff under the terms of the policy, failed to conduct a reasonable investigation, and performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property, in violation of Section 541.060(a)(7).[16]

The complaint alleges that Nationwide violated Section 541.055 of the Texas Insurance Code in failing to acknowledge Plaintiff's claims, begin investigations of them, and request all information

---

[14] Factual examples of what the settlement offer was and how the payment was inadequate?

[15] What was a reasonable time and why?

[16] Which terms of the policy show Nationwide failed to fully compensate Plaintiff, what would a reasonable investigation consist of, what facts show that the investigation was outcome-oriented with a biased, unfair and inequitable resulting evaluation of Plaintiff's losses and why and how it was biased, unfair and inequitable?

necessary to investigate the claims within fifteen days of receiving notice of them in violation of the Texas Prompt Payment of Claims Act.

Nationwide's failure to accept or deny Plaintiff's full and entire claim within fifteen days of receiving all required information and its continuing delay in providing full payment of Plaintiff's claims also violated the Texas Prompt Payment of Claims Act, Texas Insurance Code Section 542.058.

The complaint asserts that since Plaintiff presented its claims to Nationwide, the liability of Nationwide to pay them in accordance with the terms of the policy was reasonably clear,[17] yet Nationwide has refused to pay Plaintiff in full even though there is no basis on which a reasonable insurance company would have relied to deny full payments, in breach of Nationwide's common law duty of good faith and fair dealing.

### Nationwide's Motions for Partial Dismissal

Nationwide's motions contend that Plaintiff's factual allegations are "pleaded in only the most vague generalities and formulaic recitations of statutory language" and constitute the kind of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" under the federal rules. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *American Surgical Assistants, Inc. V. United*

---

[17] What made Nationwide's liability reasonably clear?

*Healthcare of Tex., Inc.*, No. 4:09-CV-774, 2010 WL 1340557, *3 (S.D. Tex. Mar. 30, 2010).

Moreover, Plaintiff's claims for violations of the Texas Insurance Code and the DTPA are based on allegations of misrepresentations or fraudulent conduct that fail to satisfy the heightened standard of factual particularity required for such claims under Rule 9(b), but instead consist of conclusory statements of Plaintiff's own legal conclusions. *See, e.g., Firth v. Guardian Life Ins. Co. Of Am.*, 9 F. Supp. 2d 734, 742-43 (S.D. Tex. 1988)(ordering plaintiff to amend); *Firth v. Guardian Life Ins. Co. Of Am.*, 9 F. Supp. 2d 744, 744-45 (S.D. Tex. 1998)(dismissing still deficient claims). Furthermore Plaintiff fails to describe a single, particular representation of any kind by Nationwide, no less one actionable as fraud. Its only allegation is vague and generic: "Nationwide misrepresented to Plaintiff that the damage to the property was not covered under the policy, even though the damage was caused by a covered occurrence." Plaintiff fails to specify what damage was covered by what provisions in the policy.

In addition, the First Amended Complaint tracks the bare bones elements of a breach of duty of good faith and fair dealing cause of action[18] without any facts to show that Nationwide failed to

---

[18] The Court notes that it is well settled that a special relationship between an insured and an insurer imposes upon the insurer a duty to investigate thoroughly and in good faith. *Viles*

*v. Security Nat'l Ins. Co.*, 788 S.W. 2d 566, 568 (Tex. 1990).

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. . . . An insurance company has exclusive control over the evaluation, processing and denial of claims.  For these reasons a duty is imposed that "[An] indemnity company is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business."

*Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W. 2d 165, 167 (Tex. 1987), *citing G.A. Stowers Furniture Co. V. Am. Indemnity Co.*, 15 S.W. 2d 544, 548 (Tex. Comm'n App. 1929).  The duty is not delegable and extends only to the insurer in contractual privity with the insured, and not to an investigator or adjuster, because the insurance contract gives the insurer exclusive control over the claim and thus creates the requisite "special relationship" *Natividad v. Alexsis, Inc.*, 875 S.W. 2d 695, 697-98 (Tex. 1994).  It is a duty imposed by law that gives rise to tort damages, including actual and exemplary damages, rather than an implied covenant that gives rise to contract liability.  *Id.*

"A cause of action for breach of duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or the delay."  *Arnold*, 725 S.W. 2d at 167.  *See also Travelers Personal Sec. Ins. Co. V. McClelland*, 189 S.W. 3d 846, 852 (Tex. Civ. App.--Houston [1st Dist.] 2006, no pet.)(opining that under Sections 541.060(a)(2) and 541.060(a)(7) of the Texas Insurance Code, an "insurer violates its duty of good faith and fair dealing by denying or delaying payment of a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered" and that "an insurer  cannot shield itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denying a claim."); *Lundstrom v. United Serv. Auto. Ass'n-CIC*, 192 S.W. 3d 78, 96 (Tex. App.--Houston [14th Dist.] 2006, pet. denied)("The common law duty of good faith and fair dealing is breached when an insurer denies or delays payment of a claim after its liability has become reasonably clear.").  The standards for liability under Texas Insurance Code Sections 541.060(a)(2)(failing to attempt in

good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear) and 541.060(a)(7)(refusing to pay a claim without conducting a reasonable investigation) are similar to those of a common law claim for breach of an insurer's duty of good faith and fair dealing and are often examined together. *Texas Mutual Ins. Co. V. Ruttiger*, 265 S.W. 3d 651, 661 n.18 (Tex. Civ. App.--Houston [1st Dist.] 2008, review granted), *citing, e.g., United Servs. Auto Ass'n v. Croft*, 175 S.W. 3d 457, 471-72 (Tex. Civ. App.--Dallas 2005, no pet.). The standard for common law breach of the duty of good faith and fair dealing is the same as that for the statutory claim. *Progressive County Mutual Insurance Co. v. Boyd*, 177 S.W. 3d 919, 922 (Tex. 2005). An insurer may also be liable for damages for breach of its duty of good faith and fair dealing when the insurer fails to attempt to effectuate a settlement where its liability has become reasonably clear or where it fails to reasonably investigate a claim in order to determine whether its liability is reasonably clear. *Universe Life Ins. V. Giles*, 950 S.W. 2d 48, 50-51, 55, 56 n.5 (Tex. 1997)("[A]n insurer will be liable if the insurer knew or should have known that it was reasonably clear the [insured's] claim was covered."). An insurer also breaches its duty of good faith and fair dealing when "the insurer has no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." Arnold, 950 S.W. 2d at 56, *citing Aranda,* 748 S.W. 2d 13.

At the same time, an insurer does not act in bad faith where a reasonable investigation shows the claim is questionable, and an insurer maintains the right to deny such a claim without being subject to liability or an erroneous denial of the claim. *Ruttiger*, 265 S.W. 3d at 661, *citing United Services Auto Ass'n v. Croft*, 175 S.W. 3d 457, 471 (Tex. App.--Dallas 2005). A bona fide dispute about the insurer's liability on the insurance contract does not rise to the level of bad faith. *Ruttinger*, 265 S.W. 3d at 661, *citing Transp. Ins. Co. V. Moriel*, 879 S.W. 2d 10, 17 (Tex. 1994). If a claim is not covered by the contract and the insurer has not otherwise breached the contract, the insurer is not liable for breach of bad faith and fair dealing where it denies the claim. *Id., citing Lundstrom*, 193 S.W. 3d at 96.

Whether there is a reasonable basis for denying a claim must be evaluated by the facts before the insurer at the time it denied the claim. *Viles*, 788 S.W. 2d at 567. "[W]hether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the fact-finder." *Giles*, 950 S.W. 2d at 56. "It is an 'objective determination' involving whether 'a reasonable insurer under similar circumstances would have delayed or denied the claimant's

"adequately and reasonably evaluate Plaintiff's claims" or that Nationwide's alleged liability was "reasonably clear." Similarly Plaintiff fails to identify what was inadequate in Nationwide's investigation or what claims were undervalued or how Nationwide knew that the payments were inadequate, nor does Plaintiff support its contention that its claim was summarily denied.

As indicated below in the Court's review of allegations in the amended complaint, the Court agrees with Nationwide that the pleading fails to satisfy Rules 8, 9(b) and 12(b)(6): it is largely composed of legal conclusions couched as factual allegations, formulaic recitations of the elements of a cause of action, generic paraphrases of statutory language, and conclusory statements without supporting facts.

**Court's Decision**

As indicated, the Court concurs with Nationwide that the pleading of Plaintiff's claims for violations of the Texas

---

benefits.' So long as a reasonable basis for denial of the claim exists the insurer will not be subject to liability for an erroneous denial of a claim." *Thompson v. Zurich American Ins. Co.*, No. A-09-CA-493-SS, 2010 WL 3784204, *4 (W.D. Tex. Sept. 21, 2010), *citing Republic Ins. Co. V. Stoker*, 903 S.W. 2d 338, 340 (Tex. 1995).

This Court observes that failure to plead a plausible claim under Rule 12(b)(6) may result in dismissal of the breach of duty of good faith and fair dealing claim. *See, e.g., Hibbets v. Lexington Ins. Co.*, 377 Fed. Appx. 352, 355-56 (5th Cir. 2010)(under similar Louisiana law, dismissing breach of duty of good faith and fair dealing claim because the allegations "are nothing more than labels and conclusions and a recitation of the language of the statutes.").

Insurance Code and the DTPA, is deficient and fails to satisfy Rules 8, 9(b) and 12(b)(6), while the pleading of Plaintiff's breach of the insurer's common law duty of good faith and fair dealing fails to satisfy Rules 8 and 12(b)(6).

Here the Court never ruled on Nationwide's first motion to dismiss the Original Petition before Plaintiff filed its First Amended Complaint. Thus Plaintiff did not have notice from this Court regarding application of the federal standards to its pleadings. Therefore the Court finds Plaintiff should be permitted an opportunity to amend.

Accordingly the Court

ORDERS that Nationwide's original motion and renewed motion for partial dismissal (#3 and 18) of Plaintiff's extra-contractual claims are GRANTED. The Court further

ORDERS that Plaintiff is GRANTED LEAVE to AMEND its pleadings within twenty days of receipt of this opinion and order. If Plaintiff amends, Defendant shall file a timely responsive pleading.

**SIGNED** at Houston, Texas, this  27th  day of  June , 2011.

                                   _____
                                           MELINDA HARMON
                                   UNITED STATES DISTRICT JUDGE